**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:25-cr-00628 |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| ERIC RASH, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant Eric Rash's motion to suppress (ECF No. 23).  Pursuant to Defendant's motion, the question before the Court is whether the affidavit used to obtain a warrant to search the residence located at 1130 E. 114th Street, Cleveland, Ohio 44108 ("1130 E. 114th Street") provided probable cause for its issuance.  The Court finds that the affidavit states a sufficient nexus between 1130 E. 114th Street and illegal drug activity to establish probable cause. Accordingly, Defendant's motion to suppress is **DENIED**.

I.      **FACTUAL BACKGROUND**

A.  **The Affidavit**

On September 10, 2024, Task Force Officer Doug Jopek (an officer of the Department of Justice's Drug Enforcement Administration) ("TFO Jopek") filed an affidavit to obtain a warrant to search and seize a residence located at 1130 E. 114th Street (the "Affidavit").  (ECF No. 23-1). The Affidavit details TFO Jopek's training and experience in the investigation of manufacturing, distribution, and use of controlled substances.  (*Id.* at PageID #104–09).  The Affidavit states that he received information of Defendant's drug trafficking activities from a Confidential Source ("CS") believed to be reliable and trustworthy.  (*Id.* at PageID #109).  The Affidavit indicates that the CS also provided Defendant's phone number.  (*Id.*).  The Affidavit included Defendant's prior

1

criminal history, which includes, among other things, drug trafficking and possession convictions. (*Id.* at PageID #110).  The Affidavit states that 1130 E. 114th Street and the Volkswagen Jetta that Defendant was observed driving are owned by and registered to Top Priority Contractor LLC, which is owned by another LLC, and so on.   (*Id.*).  The Volkswagen Jetta lists Defendant as a former owner with a listed address of 1130 E. 114th Street.  (*Id.*).  Law enforcement surveilled Defendant and 1130 E. 114th Street at various times before and throughout two separate controlled drug purchases that occurred on June 6, 2024 (96 days prior to requesting the warrant at issue) and September 5, 2024 (5 days prior).  (*Id.* at PageID #103, 111, 115).  Prior to each controlled buy, law enforcement (1) briefed and searched the CS beforehand to ensure that the CS did not already possess any money or drugs and equipped the CS with an audio/video transmitting device; (2) provided the CS with funds to facilitate the drug purchases; and (3) drove the CS to the buy location in an undercover capacity.  (*Id.* at PageID #112, 116–17).

### 1.  The First Controlled Purchase

On June 6, 2024, law enforcement conducted a controlled purchase between the CS and Defendant.  (*Id.* at PageID #111).  Law enforcement established surveillance at 1130 E. 114th Street.  (*Id.*).  Law enforcement also located the Volkswagen Jetta travelling northbound on East 114th Street from the vicinity of 1130 E. 114th Street.  (*Id.* at PageID #112).  The driver-side window was down, and law enforcement identified Defendant as the driver.  (*Id.*).  Law enforcement lost visual surveillance of Defendant's vehicle as it turned suddenly on East 120th Street at a high speed.  (*Id.*).  Soon after, Defendant and the CS met at the predetermined buy location.  (*Id.*).  Defendant sold the CS 109.9 grams of methamphetamine and 0.982 grams of a cocaine base.  (*Id.* at PageID #114).  After the controlled buy, law enforcement conducted post-buy surveillance on Defendant.  (*Id.*).  Defendant traveled in the Volkswagen Jetta to another

2

residence, Rose's Express, and finally Sam's Automotive and Tire.  (*Id.*).  Defendant did not depart Sam's Automative and Tire in the Volkswagen Jetta.  (*Id.*).   However, law enforcement with established surveillance at 1130 E. 114th Street observed a white Chevy Tahoe arrive at the residence around ten minutes later.  (*Id.*).  The white Chevy Tahoe later departed 1130 E. 114th Street and appeared to be driven Defendant.  (*Id.* at PageID #115).  Law enforcement believes that Defendant abandoned the Volkswagen Jetta and departed the automative shop in the white Chevy Tahoe without investigators knowledge.  (*Id.*).

## 2.  The Second Controlled Purchase

On September 5, 2024, law enforcement conducted another controlled purchase between the CS and Defendant.  Law enforcement established surveillance at 1130 E. 114th Street.  (*Id.* at PageID #116).  At that time, the Volkswagen Jetta was not located at 1130 E. 114th Street; only the white Chevrolet Tahoe was in the driveway.  (*Id.*).   The CS contacted Defendant by phone.  (*Id.*).  Defendant did not answer and began texting the CS to organize the transaction.  (*Id.*).  Defendant told the CS that he was on the west side and still needed to "put it together," in reference to the drugs.  (*Id.* at PageID #117).  Twenty minutes later, law enforcement surveilling 1130 E. 114th Street observed Defendant arrive at the residence in the Volkswagen Jetta, retrieve a package from the front porch, and enter and remain in the residence for about fifteen minutes.  (*Id.*).  Defendant then left the residence and met the CS at the predetermined meet location approximately two minutes later; he then sold the CS four ounces of suspected methamphetamine.  (*Id.* at PageID #117–18).[1]  Law enforcement then observed Defendant return to 1130 E. 114th Street and begin working on the white Chevy Tahoe in the driveway.  (*Id.*).

---

[1] The Court notes that the illegal drugs seized from the second control buy were pending laboratory analysis at the Cuyahoga County Regional Forensic Science Laboratory at the time of the search warrant.  (ECF No. 23-1, PageID #118).  The Affidavit details, however, that the substance received from the second controlled buy highly resembles

Based on this information, TFO Jopek stated that there is probable cause to believe that [1130 E. 114th Street] has been used and will continue to be used in connection with violations of federal law, and that "evidence relating to the[] offenses will be located and seized" there. (*Id.* at PageID #120).[2]  Based on the Affidavit, Northern District of Ohio Magistrate Judge James E. Grimes issued the requested warrant. (*Id.* at PageID #103).

### B.  The Indictment

Defendant was charged by way of Indictment on December 17, 2025.  (ECF No. 17).  He was charged as follows: Counts 1, Possession with the Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii); Count 2, Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and Count 3, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.* at PageID #17–19).  The Indictment also includes a forfeiture provision seeking the forfeiture of all firearms and ammunition involved in or used in the commission of the offenses, as well as all property associated with or derived from such offenses.  (*Id.* at PageID #19).

### C.  Defendant's Motion to Suppress

In Defendant's motion to suppress, Defendant asks this Court to suppress all evidence found during the search warrant execution at 1130 E. 114th Street on September 11, 2024.  (ECF No. 23, PageID #87).  Defendant argues that warrant and subsequent search and seizure violated his Fourth Amendment rights because the Affidavit fails to establish a probable cause nexus between illegal drug activity and 1130 E. 114th Street.  (*Id.*).  He primarily relies on the Sixth

---

and looks identical to the other methamphetamine purchased from Defendant and does not alter the Court's analysis. (*Id.*).

[2] The Affidavit references three specific statutes: 21 U.S.C. § 841(a)(1) (Distribution of Controlled Substance(s); 21 U.S.C. § 843(b) (Unlawful Use of a Communication Facility); and 21 U.S.C. § 846 (Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substance(s)).  (ECF No. 23-1, PageID #119).

Circuit's decisions in *United States v. Sanders*, 106 F.4th 455 (6th Cir. 2024) (en banc) and *United States v. Florence*, 150 F.4th 773 (6th Cir. 2025) to argue lack of a nexus between illegal drug activity and 1130 E. 114th Street for three reasons: (1) a CS did not allege Defendant sold drugs directly from the residence; (2) there were nearly three months between the two controlled buys indicated in the Affidavit; and (3) Defendant did not "immediately return to or enter [1130 E. 114th Street]" after either controlled buy. (*Id.* at PageID #99; ECF No. 28, PageID #190). Instead, Defendant argues that "without explanation or context, the affidavit simply identified [1130 E. 114th Street]." (*Id.* at PageID #88).

The Government opposed Defendant's motion. (ECF No. 26). The Government concedes that the first controlled buy may not establish probable cause, but argues that the totality of the circumstances—"multiple independent and corroborated facts, including physical surveillance and recorded controlled buys"—show the requisite nexus to establish probable cause. (*Id.* at PageID #135, 137). The Government further argues that the good-faith exception is a separate basis in which Defendant's motion should be denied because law enforcement, "with objective good faith," obtained a search warrant and acted within its scope. (*Id.* at PageID #138).

In reply, Defendant argues that the Affidavit provides nothing more than, at best, mere suspicion that the residence may be connected to illegal activity. (ECF No. 28, PageID #188). Defendant denies that law enforcement saw Defendant immediately return to 1130 E. 114th Street after the second controlled buy because it took eight minutes for him to return to 1130 E. 114th Street from the controlled buy, compared to the two minutes it initially took Defendant to travel from 1130 E. 114th Street to the meet location. (*Id.* at PageID #190). Defendant further argues that the cameras outside of Defendant's home are common-place technology for single-family residences and add nothing to the probable cause analysis. (*Id.* at PageID #191). Lastly, Defendant

5

argues that he only returned to 1130 E. 114th Street before the second controlled buy to retrieve a package that had been delivered, not illegal drugs.  (*Id.*).  Defendant maintains that he was alerted to the package's delivery through the cameras located outside of 1130 E. 114th Street.  (*Id.*).  Defendant also contends that the good-faith exception does not apply because law enforcements reliance on the search warrant was not objectively reasonable, and the issuing court abandoned its judicial role when it found probable cause.  (*Id.*).

The Court need not reach the parties arguments regarding the good-faith exception to resolve Defendant's motion to suppress.  Additionally, since the parties do not dispute the facts contained in the Affidavit, the Court declines to hold a hearing on Defendant's motion to suppress.

## II.     DISCUSSION

Defendant's motion to suppress invokes the Fourth Amendment, which ensures that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Defendant argues that the Affidavit fails to establish a probable cause nexus between illegal drug activity and the 1130 E. 114th Street; as a result, he asserts that the warrant and subsequent search violate his Fourth Amendment rights.  (ECF No. 23, PageID #87).

The precise meaning of "probable cause" continues to elude federal courts at all levels in the United States.  *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (explaining that "probable cause" is "incapable of precise definition or quantification into percentages").  In the Sixth Circuit, "[a] finding of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2016) (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)) (internal quotations omitted).  This is "not a high bar to

clear." *Id.* (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). At its core, probable cause "depends on the totality of the circumstances." *Sanders*, 106 F.4th at 461 (quoting *Pringle*, 540 U.S. at 371).

An affidavit seeking a warrant must establish "a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). A court reviewing the sufficiency of the evidence supporting probable cause must limit such review to the "four corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). Once a warrant is issued, courts give the warrant-issuing judge's probable cause determination "great deference," questioning only whether the judge had a "substantial basis" for his or her conclusion. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013); *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021). A court may only reverse a warrant-issuing judge's probable cause decision if the judge "arbitrarily exercised his or her authority." *Id.*

To justify a warrant to search a residence, law enforcement need not observe a purchase of drugs directly from a residence or observe drugs inside. *United States v. Jenkins*, 743 F. App'x 636, 644 (6th Cir. 2018). "A magistrate judge can infer a fair probability that, '[i]n the case of drug dealers, evidence is likely to be found where the dealers live,' even if 'the affidavit did not state that such evidence had been observed directly.'" *United States v. Allen*, No. 21-4029, 2023 WL 34235 (6th Cir. Jan. 4, 2023) (citing *United States v. Brown*, 828 F.3d 375, 393 (6th Cir. 2016)). While probable cause is a fact-intensive inquiry, the Sixth Circuit has developed a body of precedent to guide the probable cause analysis. *See United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019) (upholding residential search warrant when the affidavit contained statements concerning three controlled drug buys, which demonstrated that the defendant was actively

7

trafficking drugs, two of the defendant's cars were regularly parked in the driveway, and officers observed the defendant travel directly from his home to a drug sale); *Gunter*, 266 F. App'x at 419 (upholding residential search warrant when officers observed the suspect travel directly from his residence to a drug sale).

Defendant primarily relies on *Sanders* and *Florence*.  In *Sanders*, the Sixth Circuit upheld a warrant where "the controlled buys themselves justified a finding of probable cause."  106 F.4th at 463.  There, defendant Sanders "left [his] apartment, got in his vehicle, and drove directly to the buy location," sold drugs to a confidential informant, and "then returned to the apartment, parking his car outside before entering the building."  *Id.*  As the Court explained, "the informant could have obtained the drugs only from Sanders, who had traveled directly from the apartment to meet the informant."  *Id.*  Thus, the Court concluded that evidence that one leaves a residence, engages in a drug transaction, and subsequently returns to the residence demonstrates a sufficient nexus to the residence.  *Id.*; *see also United States v. Jones*, 817 F.3d 489, 492 (6th Cir. 2016) ("What matters is … that [defendant] left [said location] and drove straight to a drug deal in which he was the seller.").

A few months later, the Sixth Circuit decided *Florence* and upheld a probable cause determination based on the same "coming-and-returning" evidence present in *Sanders*.  *Florence*, 150 F.4th at 778.  There, because defendant Florence, likely while in the residence, spoke to an undercover officer on the phone shortly before the buy and stated that "he would be ready soon and assured him that 'the s*** isn't going anywhere,'" the Court found the evidence even stronger than that in *Sanders*.  *Florence*, 150 F.4th at 779.

Defendant attempts to distinguish this case from *Sanders* and *Florence*.  Defendant argues that *Sanders* is inapposite because, unlike the facts in *Sanders*: (1) law enforcement did not receive

8

a tip that Defendant sold illegal drugs from 1130 E. 114th Street; (2) the controlled buys at issue occurred three months apart, whereas the controlled buys in *Sanders* were only a week apart; (3) Defendant was not surveilled going directly to and from 1130 E. 114th Street before and after either controlled buy; and (4) Defendant did not immediately enter 1130 E. 114th Street after either controlled buy.  (ECF No. 23, PageID #98–99).

The Court begins with Defendant's third and fourth points.  Defendant reads *Sanders* and *Florence* to state that a nexus to support probable cause existed only if law enforcement surveilled Defendant as he traveled directly from 1130 E. 114th Street to the controlled buy location, completed the controlled purchase, traveled immediately back to 1130 E. 114th Street, and entered. (ECF No. 23, PageID #98–99).  The Court declines to read these cases so narrowly, and it is not alone in this regard.  As suggested by *Allen*, 2023 WL 34235, at *4, the nexus required to establish probable cause need not be so rigid as to require Defendant's *immediate* return to 1130 E. 114th Street after the controlled buy.  In *Allen*, defendant Allen was a known drug dealer.  *Id*.  Law enforcement surveilled a house and observed Allen depart the house in an SUV and go straight to the location of a controlled buy.  *Id*.  Later, law enforcement observed the same SUV outside the house.  *Id*.  The Sixth Circuit held that the combination of facts presented gave rise to a "fair probability" that Allen was trafficking drugs, and that drugs or drug paraphernalia may be inside. *Id*.  The Court did not raise issue that the affidavit did not indicate that Allen returned to the house *immediately* after the controlled buy.  Indeed, the Court stated that "[t]he detectives did not follow Allen immediately after the controlled buy, but the detective surveilling the [house] in the 'early morning hours and late evenings after the controlled buy' saw the SUV parked in the driveway." *Id.* at *1.  It was enough that Allen's SUV was "later observed" outside the house.  *Id.* at *4.  Given *Sanders*, *Florence*, and *Allen*, the crucial question before the Court is whether Defendant traveled

9

directly from 1130 E. 114th Street to the controlled buy location, sold illegal drugs, and returned to 1130 E. 114th Street afterward.  According to the Affidavit, this is precisely what happened.  Law enforcement observed Defendant arrive at 1130 E. 114th Street (where he remained inside for approximately fifteen minutes), depart 1130 E. 114th Street and drive directly (in two minutes) to the predetermined meet location for the controlled buy,[3] sell four ounces of methamphetamine to the CS, and then return to 1130 E. 114th Street where Defendant began working on the white Chevy Tahoe in the driveway.  (ECF No. 23-1, PageID #116–19).  Even more, before Defendant's arrival at 1130 E. 114th Street before the second controlled buy, Defendant stated to the CS that he was on the west side and still needed to "put it together," in reference to the drugs.  (*Id.* at PageID #117).  This may well explain why Defendant arrived at 1130 E. 114th Street, retrieved a package on the porch, and remained in the residence for fifteen minutes before driving to the predetermined location and completing the controlled buy.

Defendant's argument that he simply went to the house to obtain the delivered package is not persuasive.  That would only have required him to retrieve the package from the porch.  It did not require him to go into the residence for fifteen minutes.  Defendant has given no explanation as to why retrieval of the package from the porch necessitated going into the residence for fifteen minutes.

The Court is further unpersuaded by Defendant's remaining points.  As to the first, it is not determinative that law enforcement did not receive a tip from the CS or otherwise that Defendant sold illegal drugs from 1130 E. 114th Street.  As stated in the Affidavit, the CS identified Defendant as a drug dealer and provided Defendant's cell phone number.  (*Id.* at PageID #109).  The Affidavit

---

[3]  While it is not indicated in the affidavit that Defendant was surveilled traveling from his residence directly to the meet location, the fact that it only took two minutes for him to arrive at the latter tends to indicate that his path was direct and without any significant detour.

further states that a criminal background drug revealed, *inter alia*, Defendant's drug possession and trafficking convictions.  (*Id.* at PageID #110).  This establishes Defendant's status as a drug dealer.  Alone, drug-dealer status alone is insufficient to establish probable cause. *United States v. Simmons*, 129 F.4th 382, 387 (6th Cir. 2025).  However, a search of the Volkswagen Jetta's prior registration, as well as Defendant's expired Driver's License, reference 1130 E. 114th Street.  The Court disagrees with Defendant that the Affidavit "without explanation or context … simply identified [1130 E. 114th Street]."   (ECF No. 23, PageID #88).  Law enforcement obtained the aforementioned information on 1130 E. 114th Street through various means before surveilling and conducting the first and second controlled buys and ultimately requesting a warrant.  *See generally* (ECF No. 23-1).  Defendant's second point—that there were three months between each controlled buy—does not change the Court's conclusion.  TFO Jopek sought a warrant only five days after the second controlled buy.  (*Id.* at PageID #103).  The fact that three months intervened between the two transactions does not change the fact that drugs were allegedly sold by Defendant during both transactions.

In sum, there is a "fair probability" that Defendant was trafficking drugs and drugs and/or drug paraphernalia would be inside 1130 E. 114th Street.  *See* 2023 WL 34235, at *4.  The CS provided law enforcement with information that Defendant distributed kilogram quantities of methamphetamine, heroin, and fentanyl in the Northern District of Ohio.  (ECF No. 23-1, PageID #109).  Law enforcement surveilled Defendant and 1130 E. 114th Street.  (*Id.* at PageID #111). Law enforcement observed several cameras outside of 1130 E. 114 Street that are consistent with counter surveillance purposes.  (*Id.* at PageID #115).  Law enforcement conducted two controlled buys between a CS and Defendant that resulted in the seizure of 109.9 grams of methamphetamine hydrochloride with 0.982 grams of a cocaine base during the first controlled buy, and

11

approximately four ounces of suspected methamphetamine during the second. (*Id.* at PageID 118). Importantly, relevant to the second controlled buy, law enforcement observed Defendant leave 1130 E. 114th Street, arrive at the predetermined meet location two minutes later, sell four ounces of suspected methamphetamine to the CS, and return to 1130 E. 114th Street shortly thereafter. Given these circumstances, the Affidavit demonstrates a sufficient nexus between illegal drug trafficking activities and 1130 E. 114th Street to establish probable cause.

## III.     CONCLUSION

For the reasons stated within, Defendant's motion to suppress is hereby **DENIED**.

**IT IS SO ORDERED.**

Date: July 22, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**